IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

NICHOLAS FORD and
ALONZO HAWKINS,                          CASE NO.: 3:24-cv-00404-MCR-ZCB

      Plaintiffs,

v.

SOUTHERN ROAD & BRIDGE, LLC,

      Defendant.

_____/

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant, SOUTHERN ROAD & BRIDGE, LLC ("Defendant" or "SRB"), by and through its undersigned counsel, and pursuant to Rule 56 of the Federal Rules of Civil Procedure, files its Motion for Summary Judgment, and in support thereof states as follows:

## CONCISE STATEMENT OF RELIEF REQUESTED

This is a discrimination, harassment, retaliation and Fair Labor Standards Act ("FLSA") case in which Plaintiffs fail to meet their burden to prove such claims. Alonzo Hawkins ("Hawkins") and Nicholas Ford ("Ford")(collectively "Plaintiffs") were short-term employees of Defendant who were each paid **213.50** and **129.50** hours of overtime in the 7 months and 9 months, respectively, that they worked for Defendant, before they decided to voluntarily end their employment with Defendant.

Plaintiffs filed an Amended Complaint alleging: Count I, IV, VII, XII, XV, and XVIII - Race and Color Discrimination in violation of 42 U.S.C. §1981, Title VII, and Florida Civil Rights Act ("FCRA"), Count II, V, VIII, XIII, XVI, and XIX - Hostile Work Environment in violation of §1981, Title VII, and FCRA, Count III, VI , IX, XIV, XVII, XX, XI and XXII - Retaliation in violation of §1981, Title VII, FCRA, and Fair Labor Standards Act ("FLSA"), and Count X and XXI – in violation of FLSA.

Defendant respectfully requests the Court grant summary judgment because Plaintiffs cannot establish a *prima facie* case for each of their alleged causes of action. If the Court finds that Plaintiffs have demonstrated a *prima facie* case for any of their causes of action, Defendant requests that the Court grant summary judgment because Plaintiffs cannot establish that any of Defendant's alleged employment actions were for retaliatory or discriminatory reasons.

## STATEMENT OF FACTS

1. Ford was interviewed and hired by Foreman, Esequiel Ruiz. (Ex. 1, Ford Dep. 36:2-8).

2. Ford began his employment with Defendant as laborer in February 2023. (Ford Dep. 35:1-3; 36:4-12; Ex. 8, Ford's New Hire Packet).

3. Ford knew Ruiz prior to SRB. (Ford Dep. 63:11-20; Ex. 5, Witt Decla. ¶ 11). Alonzo Hawkins is Ford's brother. (Ford Dep. 63:11; Witt Decl. ¶ 45).

Dezmond Jones is their cousin.  (Ford Dep. 63:12-13; Witt Decl. ¶ 45).

4.  Ford was paid $22.00 per hour. (Ford Dep. 36:16-18; Ex. G to Witt Decl.).

5.  Ford, who had a valid driver's license, was added as a driver three weeks after his initial hire. (Ford Dep. 36:25-37:7; Witt Decl. ¶ 15). Following this change, Ford's pay increased to $24.00 per hour. (Ford Dep. 36:25-37:7; Witt Decl. ¶ 16).

6.  Ruiz picked up Hawkins from his house and introduced him to SRB. (Ex. 2, Hawkins Dep. 37:7-16; Witt Decl.¶ 11).

7.  Hawkins was hired by Superintendent, Ryan Witt.[1] (Hawkins Dep. 38:8-10; Witt Decla. ¶ 11). Hawkins began his employment with Defendant as a laborer on April 11, 2023. (Hawkins Dep. 38:2-7; 39:21-24; Ex. 9 Hawkins' New Hire Packet).

8.  Hawkins was paid $23.00 per hour. (Hawkins Dep. 109:8-10; Ex. F to Witt Decl.).

9.  If an employee has an issue and requires Human Resources' attention, the employee can discuss any issues with the EEO Officer or HR any time. ( Ex. 3, Pappas Dep. 46:18-23, Witt Decl. ¶¶ 12-14).

10. As part of his onboarding, Ford was given a copy of the Handbook. (Ford

---

[1] Plaintiffs decided unilaterally to cancel Witt's deposition, so his deposition was not taken but his Declaration was filed in support of this Motion. Witt was the superintendent who was at and responsible for Plaintiffs' jobsite.

Dep. 39:16-20; Witt Decl. ¶12).

11. Ford admitted that in his review of the Handbook, he is aware of the policies regarding filing a complaint with SRB, requesting time off, and submitting a two-week notice. (Ford Dep. 40:8-21; 40:22-41:3; 41:4-11).

12. If the employees have any issues about their supervisor, foreman or superintendent they have many avenues for help. (Pappas Dep. 94:11-22). Employees can call directly the EEO office, the HR department, the project manager, or the SRB office. (*Id*.) Their contact information is in the employee handbook and onsite on the job board where it is visible to everyone. (Pappas Dep. 94:11-22; 94:23-95:4).

13. Ford and Hawkins both acknowledged the EEO policies. (Witt Decl. ¶ 13; Ex. B to Witt Decl.).

14. Hawkins admitted he personally gets along with Witt. (Hawkins Dep. 47:23-25). He never had previous issues with Witt before the allegations in his complaint. (Hawkins Dep. 48:9-12).

15. Ford admitted he never reported to HR an incident in April 2023 about Witt's alleged racial slurs. (Ford Dep. 60:3-14, 60:20-21).

16. Ford admitted they never reported any issues to HR despite acknowledging the EEO Policy and knowing that the EEO officer and HR were available for reporting complaints to. (Ford Dep. 61:14-15; 61:16-62:10; Witt Decl.

¶¶ 13-14; Ex. B to Witt Decl.).

17. Ford failed to follow policy that required him to immediately report his complaints of discrimination and unlawful harassment in writing to the EEO Officer. (Ford Dep. 75:21-76:16).

18. Ford and Ruiz's relationship remained constant, in that he would interact as usual including hanging out with Ruiz and smoking a cigarette with him. (Ford Dep. 62:11-23).

19. Hawkins never heard Witt used the "N" word with him. (Hawkins Dep. 124:3-5).

20. From the time he was hired until June 2023, Ford did not have any issues with Ruiz. (Ford Dep. 44:14-17).

21. Around July or August 2023, Ruiz suspended Ford for three days after Ford was found sleeping on the job. (Ford Dep. 65:14-66:11).

22. Neither Project Manager, George Pappas, Witt, nor Ruiz received any complaints from Plaintiffs regarding discrimination or any inappropriate or racist language that made them feel uncomfortable. (Pappas Dep. 95:5-11; Witt Decl. ¶¶ 40-43; and Ex. 4, Ruiz Dep. 67:17-19).

23. The Foreman and the Superintendent would select employees with a valid driver's license, does not have any criminal issues, or DUI to drive the company truck. (Pappas Dep. 24:25-25:6).

24. Ford had a valid driver's license and Ruiz authorized him to drive a company truck to haul tools and materials. (Ford Dep. 36:25-37:7; Ruiz Dep. 63:22-64:18).

25. Dezmond Jones had a valid driver's license and Ruiz authorized him to drive a flatbed truck to haul materials to the yard. (Ruiz Dep. 63:10-20).

26. Hawkins is not an authorized driver of the company vehicles as he does not have a valid driver's license. (Witt Decl. ¶ 37). In fact, Witt once caught Hawkins driving the company truck. (*Id.*) Hawkins was immediately reprimanded. (*Id.*).

27. Ruiz relayed to the crew—not just Plaintiffs—that they all need to go eat an hour before work so they could be at the yard on time. (Hawkins Dep. 98:19-99:12). Despite acknowledging the EEO Policy and knowing that the EEO officer and HR were available for reporting complaints to, Hawkins never reported this incident to HR. (Hawkins Dep. 101:24-102:4; Witt Decl. ¶¶ 13-14; Ex. B to Witt Decl.). He never reported this incident to anyone else that worked at SRB. (Hawkins Dep. 102:5-10). Hawkins never even talked to Witt about this issue. (Hawkins Dep. 102:11-19; Witt Decla. ¶ 30).

28. Hawkins stated that Ruiz told Plaintiffs to go under the bridge and use it as a bathroom. (Hawkins Dep. 100:22-101:10). Hawkins admits he never reported this incident to anybody. (Hawkins Dep. 101:15-20). Hawkins never

contacted HR about it claiming he did not have HR's number. (*Id*.). Hawkins also admitted he never asked for HR's number. (Hawkins Dep. 101:21-23).

29. The allegations in the Complaint where Ruiz allegedly did not let Black employees drive company cars, eat lunch, or use the porta-potties on the job site were never reported to Pappas. (Pappas Dep. 83:24-84:1).

30. Between April 11, 2023 and November 9, 2023, Hawkins was paid **213.50** of overtime hours. (Ex. F to Witt Decl.; Witt Decl. ¶ 23).

31. Between February 26, 2023 and November 6, 2023, Ford was paid **129.50** of overtime hours. (Ex. G to Witt Decl.; Witt Decl. ¶ 24).

32. Hawkins affirmed when he discussed an issue with alleged overtime that was not paid, Witt indicated he will fix the issue and the 13 hours owed will be on the next check. (Hawkins Dep. 51:2-7; 48:12-16).

33. Hawkins confirmed that the following week SRB did put the 13 hours on the paycheck. (Hawkins Dep. 54:1-12). And in July, Hawkins was paid. (Hawkins Dep. 78:10-14). Hawkins received an additional amount to remedy his alleged overtime that was not paid. (Hawkins Dep. 78:2-14).

34. On November 6, 2023, Hawkins complained to Witt about hours not paid for the time period of October 23 to October 29, 2023. (Witt Decl. ¶¶ 18-19; Ex. D to Witt Decl.).

35. HR reached out to Hawkins asking him to let the staff know what hours are

wrong and even requested for a return call to go over the hours so Hawkins gets paid correctly. (Hawkins Dep. 80:5-81:24).

36. Witt instructed Hawkins to call Christina who handles payroll if there are discrepancies in his pay. (Ex. E to Witt Decl.; Witt Decl. ¶ 19).

37. Hawkins never spoke to HR directly himself claiming he never had their number. (Hawkins Dep. 93:3-94:2; 96:16-25).

38. Hawkins admitted that Pappas reached out to them to discuss their hours. (Hawkins Dep. 106:11-14). Pappas asked to meet with Plaintiffs at the jobsite but they refused. (Hawkins Dep. 82:8-25).

39. In November 2023, Pappas spoke with Plaintiffs and requested for both of them to meet with him to discuss and resolve their issues. (Pappas Dep. 42:5-25). But they both declined and said they were going to retain a lawyer and sue SRB. (*Id*.). Plaintiffs refused to engage or provide any documentation. (Pappas Dep. 92:20-23).

40. Even before Pappas reached out to Plaintiffs to try to meet and discuss their hours if there were any discrepancies, Plaintiffs had already stopped showing up for work for multiple days. (Exs. H and I to Witt Decl.). Plaintiffs never provided any notice to their supervisor or Pappas of their absence. (Pappas Dep. 92:24-93:10).

41. Before Plaintiffs, Pappas never had a complaint from a single employee

regarding any unlawful conduct. (Pappas Dep. 17:1-6).

42. Ruiz never signed Plaintiffs' name on any daily time sheet. (Ruiz Dep. 47:24-48:1).

43. The time sheets were left in the company truck's unit folder and everyone had the ability to verify their hours worked at their leisure and if any hours required adjustment, they were fixed immediately. (Ruiz Dep. 67:25-68:13).

44. On Nov. 5, 2023, Witt contacted Ford by phone and gave him the opportunity to come back to work; however, Ford refused. (Ford Dep. 71:6-72:4; Witt Decl. ¶ 57).

45. On Nov. 6, 2023, Pappas texted Ford to inform him he will be voluntarily terminated for job abandonment. (Ford Dep. 68:18-69:17; Ex. J to Witt Decl.). Pappas then texted back requesting for a call so he can discuss Ford's return to work. (*Id*.) Ford did not call Pappas. (*Id*.)

46. Ford told Pappas to text him as he was in school attending orientation. (Ford Dep. 69:18-25; Ex. J to Witt Decl.).

47. On November 6, 2023, Ford was voluntarily terminated for job abandonment. (Ex. I to Witt Decl.; Witt Decl. ¶¶ 57-58). Ford admitted he had not reported to work for five (5) work days since October 24, 2023. (Ford Dep. 73:24-74:1). Ruiz and Witt tried contacting Ford many times but he refused to answer his phone. (Witt Decl. ¶ 57). This was a resignation

and not an SRB-initiated termination. (Ex. I to Witt Decl.; Witt Decl. ¶ 58).

48. Ford was paid for all work and SRB made efforts to ensure Ford was paid. (Ford Dep. 67:21-68:5; Ex. G to Witt Decl.).

49. Hawkins was paid for all work and SRB made efforts to ensure Hawkins was paid. (Ex. F to Witt Decl.).

50. On November 9, 2023, after Hawkins has not called nor showed up to work for two (2) days, Witt, Pappas, and Ruiz attempted to contact Hawkins by calls and text messages. (Witt Decl. ¶¶ 54-56). However, Hawkins blocked both Ruiz and Witt and refused to speak to them. (Witt Decl. ¶ 56). Hawkins never asked for permission to go on leave. (*Id*.). As a result, Hawkins was voluntarily terminated for "no call, no show." (Ex. H to Witt Decl.; Witt Decl. ¶¶ 54-56).

51. This was a resignation and not an SRB-initiated termination. (Ex. H to Witt Decl.; Witt Decl. ¶ 54).

52. In the past year, SRB has voluntarily terminated two to four employees for absenteeism or "no call, no show." One of these terminated employees was White. (Pappas Dep. 40:6-42:1).

53. Plaintiffs did not seek treatment for emotional pain and mental anguish. (Hawkins Dep. 110:13-24; 111:9-13; Exs. 6 and 7, Plaintiffs' Res. to Def.'s Interrog. Nos. 9, 10, 18 and 19).

54. Following their voluntary terminations, Plaintiffs have failed to obtain subsequent employment. (Ex. 10, Attestation of No Records).

## MEMORANDUM OF LAW

**I.  Defendant is Entitled to Summary Judgment for Count I, IV, VII, XII, XV, and XVIII – Race and Color Discrimination – Because Plaintiffs Failed to Establish a Prima Facie § 1981, Title VII and FCRA Action**

### A. Plaintiffs Cannot Present Direct Evidence to Show that But-For Their Color/Race Their Employment Would Not Have Ended

Plaintiffs have not and cannot establish a prima facie case of discrimination because Plaintiffs have identified no direct or circumstantial evidence of discrimination under 42 U.S.C. § 1981, Title VII, and the FCRA.

42 U.S.C. § 1981 "prohibits intentional racial discrimination in the making and enforcement of private contracts, including employment contracts." *Washington v. Kroger Co.*, 218 Fed. App'x 822, 824 (per curiam) (11th Cir. 2007). "The elements of a section 1981 claim in the employment context are the same as the elements of a Title VII claim." *Harrison v. Belk, Inc.*, 748 Fed. App'x 936, 941 (11th Cir. 2018) (citation omitted). However, the test under Section 1981 is whether there was intent to discriminate because of race. *E.g., Rutstein v. Avis Rent-A-Car Sys., Inc.*, 211 F.3d 1228, 1235 (11th Cir. 2000). Meanwhile, the Florida Civil Rights Act ("FCRA") "is patterned after Title VII, and therefore federal case law regarding Title VII is applicable." *Maldonado v. Publix Supermarkets*, 939 So. 2d 290, 293 n.2 (Fla. 4th DCA 2006) citing *Castleberry v. Edward M. Chadbourne, Inc.*, 810 So.2d 1028,

1030 (Fla. 1st DCA 2002). Courts have determined that there is no need to discuss Title VII disparate treatment claims separately from other claims when the legal elements of the claims are identical. *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008).

To establish a Title VII claim, a plaintiff may "present[] direct evidence of discrimination or circumstantial evidence that creates an inference of discrimination." *Jolibois v. Florida Intern. Univ. Bd. of Trustees*, 92 F.Supp.3d 1239, 1243 (S.D. Fla. 2015); *aff'd*, 654 Fed. Appx. 461 (11th Cir. 2016)(citing *Giles v. Daytona State Coll., Inc.*, 869 Fed. Appx. 869, 872 (11th Cir. 2013)). Direct evidence is defined as "evidence that establishes the existence of discriminatory intent behind the employment decision without any inference of presumption." *Burrell v. Bd. of Trustees of Georgia Military Coll.*, 125 F.2d 1393, 1394 (11th Cir. 1997)(holding that evidence which suggests but does not prove discriminatory motive is circumstantial evidence by definition). To be direct evidence, the treatment complained of must be motivated by discrimination on the basis of the protected class. *Figueira v. Sch. Bd.*, 2007 U.S. Dist. LEXIS 84713, at *4 (S.D. Fla. Oct. 11, 2007). Thus, remarks by non-decision makers or remarks unrelated to the decision-making process itself are not direct evidence of discrimination. *Quinones v. McDonough*, No. 3:20CV6005-TKW-HTC, 2022 WL 19408079, at *6 (N.D. Fla. Apr. 15, 2022); *Claybrone v. Goldring Gulf Distrib.*, No. 3:12CV381/MCR/CJK,

2015 WL 5619523, at *6 (N.D. Fla. Aug. 27, 2015), *report and recommendation adopted*, No. 3:12CV381/MCR/CJK, 2015 WL 5595694 (N.D. Fla. Sept. 21, 2015).

Here, Plaintiffs have presented no direct evidence that they underwent any treatment different from other employees at SRB. Plaintiffs rely on circumstantial evidence because their argument that Defendant discriminated against them is based on inferences.

**B. Plaintiffs Cannot Present Circumstantial Evidence to Show that But-For Their Color/Race Their Employment Would Not Have Ended**

When Plaintiffs' allegations are considered under the standards for circumstantial evidence, their claim also fails. Under the *McDonnell Douglas* analysis, to establish a prima facie case of discrimination Plaintiffs must show that (1) they were a member of a protected class, (2) they were qualified for the position at issue, (3) they suffered an adverse employment action, and (4) other similarly situated employees outside the class were treated more favorably." *Rice-Lamar v. City of Ft. Lauderdale, Fla.,* 232 F.3d 836, 842-43 (11th Cir. 2000). *See also Alvarez v. Royal Atl. Devs.,Inc.*, 610 F.3d 1253, 1264 (11th Cir. 2010) (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)).The burden placed on a plaintiff of establishing a prima facie case "serves, in part, to assure that the plaintiff has some competent proof that she was treated differently than similarly situated employees." *Schultz v. Board of Trustees of University of*

*West Florida*, 2007 WL 2066183, at *2 (N.D. Fla. July 13, 2007) quoting *Lang v. Star Herald*, 107 F.3d 1308, 1312 (8th Cir. 1997).

While Plaintiffs are members of a protected class and were qualified for their position, they cannot establish a prima facie claim for discrimination because Plaintiffs did not suffer adverse employment actions, were not treated less favorably than others outside of the protected class, and Plaintiffs cannot establish that race/color is the reason for their termination.

### i. Plaintiffs Did Not Suffer Adverse Employment Action

To prevail on a race discrimination claim, Plaintiffs must prove that the employer subjected the employee to an adverse employment action. An "adverse employment action" is "*a serious and material* change in the terms, conditions, or privileges of employment." *See Crawford v. Carroll*, 529 F.3d 961, 970-71 (11th Cir. 2008) (internal quotation marks omitted). However, even under the lightened burden recently decided by the Supreme Court of "some harm" Plaintiffs have not suffered any harm, let alone some harm. *Muldrow v. City of St. Louis*, 601 U.S. (2024).

Plaintiffs were not subject to an adverse employment action. Plaintiffs were not terminated from their position, but they each voluntarily quit. Ford admitted as of November 6, 2024, he has not gone to work for five (5) days and did not return to work even after attempts to contact him to return to work. (Ford Dep.

73:24-74:1). Meanwhile, Hawkins was voluntarily terminated for "no call, no show" after attempts were made to contact him when he did not show up to work for two days. This is not an SRB-initiated termination. (Ex. H to Witt Decl.; Witt Decl. ¶ 54).

As explained in former SRB Superintendent, Ryan Witt's Declaration, under the Handbook, a voluntary employment termination is initiated by the employee and is deemed as "resignation." As opposed to an employment termination initiated by Defendant, which is considered a "discharge." (Witt Decl. ¶¶ 55, 59; Ex. A to Witt Decl.).

Ruiz and Witt tried contacting Ford many times but he refused to answer his phone. (Ex. J to Witt Decl.; Witt Decl. ¶ 57). Ford still refused to come back to work after Witt spoke with him on November 5, 2023 and offered him to come back. (Ford Dep. 71:6-72:4; Witt Decl. ¶ 57).

Pappas even texted Ford that he will be voluntarily terminated for job abandonment. (Ford Dep. 68:18-69:17; Ex. J to Witt Decl.). Ford still refused to come back to work. (*Id.*). Ford texted Pappas and told Pappas to contact him by text only as he was in school attending orientation. (*Id.*). It was later found out that Ford enrolled in a career pathway program. (Witt Decl. ¶ 58). As such, this was a resignation and not an SRB-initiated termination. (Ex. I to Witt Decl.; Witt Decl. ¶ 58).

Meanwhile, Hawkins did not call nor show up for work for two (2) days. Multiple employees tried to call Hawkins but he never responded and blocked all his team members' numbers, illustrating his intent to quit the position. (Witt Decl. ¶ 56). Pappas tried to text Hawkins to ask if he is going to work. Hawkins never responded. (Witt Decl. ¶¶ 54-56, Ex. H to Witt Decl.). Like Ford, this was a resignation and not an SRB-initiated termination.

Assuming, arguendo, that Plaintiffs were involuntarily terminated—which clearly they were not— Courts have determined that  "where ... 'the hirer and the firer are the same individual and the termination of employment occurs within a relatively short time span following the hiring, a strong inference exists that discrimination was not a determining factor for the adverse action taken by the employer.'" *E.E.O.C. v. Florida Commercial Sec. Services, Corp.,* No. 13-20465-CIV, 2014 WL 4771887, at \*16 (S.D. Fla. Sept. 24, 2014)(internal citations omitted).

Here, Witt hired Plaintiffs. Ford worked with SRB for 9 months; Hawkins worked for 7 months. Ford was interviewed by Ruiz and Ruiz recommended Plaintiffs to Witt (Ford Dep. 36:2-8; Witt Decl. ¶¶ 11, 64). Witt admits he hired Plaintiffs knowing they are Black. He was told by Ruiz Plaintiffs were good workers. He would not have hired Plaintiffs if his intent were to discriminate. (Witt Decl. ¶ 64). More importantly, SRB would not have made such efforts to inundate Plaintiffs with calls and texts to ask them to come back to work if their intent was to

discriminate and terminate. "Claims that employer animus exists in termination but not in hiring seem irrational….From the standpoint of the putative discriminator, '[i]t hardly makes sense to hire workers from a group one dislikes (thereby incurring the psychological costs of associating with them), only to fire them once they are on the job.'" *Dingman v. Delta Health Group, Inc.*, 26 F. Supp. 2d 1349, 1354–55 (S.D. Fla. 1998)(internal citations omitted).

Ultimately, Plaintiffs voluntarily left their position. Plaintiffs cannot establish that race/color was the reason for their termination. There is no evidence to support Plaintiffs' claims that they suffered an adverse employment action.

### ii.    Plaintiffs Were Not Treated Less Favorably than Others Outside of the Protected Class; Therefore, They are Unable to Establish a Prima Facie Claim of Discrimination and Counts I, IV, VII, XII, XV, and XVIII Must be Dismissed

Plaintiffs have presented no evidence that they underwent any treatment different from other employees at SRB. "In determining whether employees are similarly situated for purposes of establishing a prima facie case, it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways. The employee must show that []he and the employees outside [his] protected class are similarly situated 'in all relevant respects.' Thus, 'the quantity and quality of the comparator's misconduct [must] be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges.'" *Valenzuela v. GlobeGround N. Am.,*

*LLC,* 18 So. 3d 17, 22-23 (Fla. 3d DCA 2009)(citations omitted); see also *Schultz v. Bd. of Trs. Of Univ. of W. Fla.*, 2007 WL 2066183, at *11 (N.D. Fla., July 13, 2007).

A similarly situated comparator will ordinarily have engaged in the same basic misconduct as the Plaintiffs, been subject to the same employment policy, guideline, or rule, shared the same supervisor, and shared the Plaintiffs' employment or disciplinary history. *Lewis v. City of Union City,* 918 F.3d 1213 (11th Cir. 2019).

To be clear, it is Plaintiffs burden to identify such similarly situated comparators. The "burden is on the plaintiff to show the similarity between his or her conduct and that of other employees who were treated differently, and not on the defendant to disprove their similarity*" Dept. of Children and Family Services v. Garcia*, 911 So. 2d 171, 173- 74 (Fla. 3d DCA 2005) quoting *Moreland v. Miami-Dade County*, 255 F. Supp. 2d 1304, 1312 (S.D. Fla. 2002).

"If a plaintiff fails to show the existence of a similarly situated employee, summary judgment is appropriate where no other evidence of discrimination is present." *Coar v. Pemco Aeroplex, Inc.,* 372 Fed. Appx. 1, 3 (11th Cir. 2010).

Plaintiffs raise these discrimination claims without a scintilla of evidence that Hispanic employees were given favorable treatment over Black employees. In fact, Plaintiffs fail to name one Hispanic employee that was given favorable treatment. Plaintiffs complained that Black employees are not being allowed to stop for food before going to the jobsite and are denied lunch breaks, while Hispanic employees

are being allowed such. However, Hawkins admitted that Ruiz relayed to the entire crew—not just Plaintiffs—that they <u>all</u> need to go eat an hour before work so they could be at the yard on time. (Hawkins Dep. 98:19-99:12). This was a directive applicable to <u>all</u> employees including Blacks, Caucasians, and Hispanics, etc. Even if this was an issue—which clearly it is not as it was addressed to all crew members—Hawkins never reported this incident to HR claiming he did not have HR's number. Hawkins never even talked to Witt about this issue.

Witt denied the alleged discriminatory treatment of Black employees compared to Hispanic employees. Witt is not aware of Hispanic employees being allowed to stop for food, while Black employees were not. Witt also stated that he was not aware of any Black employees being denied a lunch break because none of the employees ever complained to him. (Witt Decl. ¶¶ 30-35).

Plaintiffs also purport that Black employees are denied access to operate the company vehicles, while Hispanics are allowed such. Plaintiffs forget the glaring fact that Ford had a valid driver's license and Ruiz authorized Ford to drive a company truck to haul tools and materials. Plaintiffs' cousin, Dezmond Jones—a Black Male—had a valid driver's license and Ruiz also authorized him to drive a flatbed truck to haul materials to the yard. (Ruiz Dep. 63:10-20). Per Defendant's policy, only employees with a valid driver's license, does not have any criminal issues, or DUI are authorized to drive the company vehicles. (Pappas Dep. 24:25-

25:6). Hawkins is not an authorized driver of the company vehicles because he does not have a valid driver's license. (Witt Decl. ¶ 37). The only reason Hawkins is not allowed to drive the company truck is because he did not have a valid driver's license and had nothing to do with race or color. Especially, when Ford and Jones were clearly authorized to drive the company vehicles.

As to complaints about Black employees not being allowed to use the restroom, Hawkins admits he never reported this incident to anyone. Hawkins never contacted HR about it claiming he did not have HR's number. (Hawkins Dep. 101:15-20; Witt Decla. ¶¶ 49-51). Also, issues about Ruiz not letting Black employees drive company cars, eat lunch, or use the porta-potties on the job site were never reported to Pappas. (Pappas Dep. 83:24-84:1). Because that did not happen.

Notably, just like Plaintiffs, a Caucasian comparator was voluntarily terminated for "no call, no show." (Pappas Dep. 40:6-42:1).

Accordingly, Plaintiffs fail to establish a *prima facie* case of race/color discrimination because they have not, nor cannot show that anyone outside of their protected class were treated more favorably, and on this basis alone summary judgment should be granted in favor of Defendant.

### iii.    Plaintiffs Cannot Establish Intentional Discrimination as Required by Section 1981; Therefore, Summary Judgment is also Appropriate as to Counts I and XII

Section 1981 requires a Plaintiff to prove intentional discrimination. *Washington v. Kroger Co.*, 218 F. App'x 822, 824 (11th Cir. 2007) (per curiam) Here, as noted above, Plaintiffs have not produced any evidence to establish discrimination under Title VII, or the FCRA, and Plaintiffs are unable to establish any evidence that supports their claim for intentional discrimination under Section 1981. Therefore, Summary Judgment is proper as to Plaintiffs' claim of discrimination under Section 1981.

### iv.    Plaintiffs Cannot Prove That Defendant's Legitimate, Non-Discriminatory Reasons for Employment Actions Were False; Therefore, Summary Judgment is also Appropriate as to Counts I, IV, VII, XII, XV, and XVIII

Even if Plaintiffs have established a *prima facie* case of discrimination, Defendant is still entitled to summary judgement because all actions taken toward Plaintiffs were based on legitimate, non-discriminatory reasons, and Plaintiffs cannot prove pretext masking unlawful discrimination.

Once Plaintiffs successfully establish a *prima facie* case of discrimination, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its action. *Alvarez v. Royal Atl. Devs., Inc.*, 610 F.3d 1253, 1264 (11th Cir. 2010). The employer must explain the reasons for its actions but need not persuade the court that it was actually motivated by its proffered reasons. *Id.*  If the employer articulates

one or more legitimate, non-discriminatory reasons for its action, Plaintiffs must show that the employer's reason was pretextual. *Holland v. Gee*, 677 F.3d 1047, 1055 (11th Cir. 2012). To show pretext, an employee must specifically respond to the employer's proffered reason and produce evidence directly rebutting that reason. *Id.* If the proffered reason is one that would motivate a reasonable employer, an employee cannot simply quarrel with the wisdom of the employer's decision. *Id.* A proffered reason cannot "be a pretext for discrimination unless it is shown both that the reason was false, and that the discrimination was the real reason." *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 515 (1993) (internal quotation marks and emphases omitted). Despite the shifts in burden of production under the *McDonnell Douglas* standard, the employee still carries the ultimate burden of persuasion at all times.

Here, Plaintiffs offer no evidence that the basis for the employment action was false, as outlined in the Statement of Facts. Ford admitted by November 6, 2024, he has not gone to work for five (5) days. (Ford Dep. 73:13-74:1). Hawkins has not called nor showed up to work for two (2) days. (Witt Decl. ¶ 54). Even before Pappas reached out to Plaintiffs to try to meet and discuss their hours if there were any discrepancies, Plaintiffs had already stopped showing up for work for multiple days. Plaintiffs never provided any notice to their supervisor or Pappas of their absence. (Pappas Dep. 92:24-93:10). Plaintiffs could not deny the multiple text messages and

follow up calls, even Ford's request to Pappas to text him back as he was in school attending orientation. (Ex. J to Witt Decl.; Witt Decl. ¶¶ 57-58).

The relevant inquiry in a pretext analysis is not whether the employer's proffered reasons were wise, fair, or correct, but instead whether the employer believed those reasons to be true and acted in good faith upon those beliefs. *See Vickers v. Federal Express Corp.*, 132 F. Supp. 2d 1371, 1381 (S.D. Fla. 2000) ("The issue of pretext has nothing to do with the employee's perception of fairness.").

Plaintiffs' complete failure to present any evidence of disparate treatment also prevents them from establishing that the reasons for any adverse employment action were a pretext for discrimination. *Valenzuela*, 18 So. 3d at 26, citing *Morrow v. Wal-Mart Stores, Inc.*, 152 F.3d 559, 561 (7th Cir.1998) (the similarly situated inquiry remains the same "[w]hether couched in terms of establishing a prima facie case or in terms of demonstrating pretext...").

Plaintiffs simply cannot legally meet their burden of proving pretext for discrimination by offering their subjective disagreement that any and all actions taken in respect to their employment were the result of discrimination. Plaintiffs fail to establish a prima facie case of race/color discrimination. Thus, summary judgment should be granted in favor of Defendant.

## II.     Defendant is Entitled to Summary Judgment for Count II, V, VIII, XIII, XVI, and XIX - Hostile Work Environment − Because Plaintiffs Failed to Establish a Prima Facie § 1981, Title VII, and FCRA action

To establish a *prima facie* case of hostile work environment, Plaintiffs must prove all of the following elements: (1) Plaintiffs belong to a protected group; (2) Plaintiffs were subjected to harassment which was unwelcome and offensive; (3) the harassment was based on their protected characteristic; (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) there is a basis for holding the employer liable. *Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.2d 798, 809 (11th Cir. 2010)(en banc)(citations omitted).

In order to hold the employer liable, Plaintiffs must show that Defendant knew or should have known of the alleged harassment and failed to take prompt remedial action. *Henson v. City of Dundee*, 682 F.2d 897, 904 (11th Cir. 1982). An employee can meet this showing by demonstrating either that the employer knew of the harassment via their direct complaints, or via proof that the harassment was so pervasive it gives rise to an inference of knowledge which can be imputed to the employer. *Id.*

Plaintiffs cannot prove all of the required elements because any alleged harassment was neither sufficiently severe nor pervasive to alter the terms and conditions of employment or create a discriminatorily abusive working

environment. The Supreme Court has held for harassment to be actionable, the "work environment must be **both objectively and subjectively offensive**, one that a reasonable person would find hostile or abusive, and **one that the victim in fact did perceive to be so**. *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998)(emphasis added). Courts look at the totality of the circumstances, "including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id*. at 787-88 (internal citations omitted). *See also Allen v. Tyson Foods,* 121 F.3d 642, 647 (11th Cir.1997)); *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21-22 (1993).

The Supreme Court opined that "teasing, offhand comments, and isolated incidents" do not constitute discriminatory changes in terms and conditions of employment. *Faragher,* 524 U.S. at 788 (citation omitted). In other words, the "standards for judging hostility are sufficiently demanding to ensure that [discrimination laws do] not become a general civility code." *Id*.

The "severe and pervasive" element is a strict threshold requirement for Plaintiffs to even meet the initial showing of a hostile work environment. General vulgarity or references to sex that are 'indiscriminate in nature will not, standing alone, generally be actionable." *Reeves*, 594 F.3d at 807. The Supreme Court has "never held that workplace harassment, even harassment between men and women,

is automatically discrimination because of sex merely because the words used have sexual content or connotations." *Id.* Instead, the test is "whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed. *Reeves*, 594 F.3d at 807, 809.

Here, Plaintiffs cannot show that Defendant knew or should have known of the alleged harassment and failed to take prompt remedial action because they never reported the harassment. Even if Plaintiffs report the harassment, any alleged harassment was neither sufficiently severe nor pervasive to alter the terms and conditions of employment or create a discriminatorily abusive working environment.

Assuming, arguendo, that Plaintiffs have a valid hostile environment claim—which they do not—Defendant is still entitled to summary judgment pursuant to the *Faragher-Ellerth* affirmative defense. To successfully assert this defense, the employer must satisfy two elements: "(a) that the employer exercised reasonable care to prevent and promptly correct any sexually harassing behavior, and (b) that the employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998); *see also Burlington Indus., Inc. v. Ellerth*, 524 U.S. 765 (1998). These elements have been clearly satisfied.

As to the first element, Plaintiffs admit that as part of their onboarding, they

were given a copy of the Handbook. (Ford Dep. 39:16-20; Ex. A to Witt Decl.; Witt Decl. ¶ 12). Plaintiffs also signed the Equal Employment Opportunity Policy Statement. (Ex. B to Witt Decl.; Witt Decl. ¶ 13).  The Handbook  and EEO Policy provide that any employee who believes they have been a victim of discrimination or harassment must report it immediately. (Pappas Dep. 94:1-22, 94:23-95:4; Ex. C to Witt Decl., Witt Decl. ¶ 14). Ford admitted that in his review of the Handbook, he is aware of the policies regarding filing a complaint with SRB (Ford Dep. 40:8-21). Here, SRB clearly "exercised reasonable care to prevent…harassing behavior." *See Faragher*, 524 U.S. at 807; *Ellerth*, 524 U.S. at 765.

As to the second element, Plaintiffs admitted multiple times that they never reported to HR any of the incidents they allegedly experienced claiming they do not have HR's number. Plaintiffs did not report the alleged incident about racial slurs (Ford Dep. 60:3-14, 60:20-21); Witt's alleged comment about "y'all can bang her with y'all big black cock" (Hawkins Dep. 58:19-59:6); not being allowed to stop for food before going to the jobsite (Hawkins Dep. 101:24-102:4); and not being allowed to use the restroom (Hawkins Dep. 101:15-20; Witt Decla. ¶¶30-50).

Even Ford admitted that he failed to follow policy that required him to immediately report his complaints of discrimination and unlawful harassment in writing to  EEO Officer. (Ex. C to Witt Decl.; Ford Dep. 75:21-76:16). Plaintiffs clearly "unreasonably failed to take advantage of any preventive or corrective

opportunities provided by the employer." *See Faragher*, 524 U.S. at 807; *Ellerth*, 524 U.S. at 765. Courts upheld the *Faragher-Ellerth* defense. *See Madray v. Publix Supermarkets, Inc.*, 208 F.3d 1290 (11th Cir. 2000), *Walton v. Johnson & Johnson Services, Inc.*, 347 F.3d 1272 (11th Cir. 2003) and *Lawrence v. Wal-Mart Stores, Inc.*, 236 F. Supp. 2d 1314 (M.D. Fla. 2002).

Plaintiffs fail to establish a prima facie case of hostile work environment and their claims are barred pursuant to the *Faragher-Ellerth* defense. Thus, summary judgment should be granted in favor of Defendant.

## III.   Defendant is Entitled to Summary Judgment for Count III, VI , IX, XIV, XVII, XX, XI and XXII - Retaliation – Plaintiffs   Cannot Establish All Three Elements of Their Retaliation Claim

To establish a *prima facie* case of retaliation, Plaintiffs must show that: (1) they engaged in statutorily protected activity; (2) they suffered an adverse employment action; and (3) there is a causal link between the protected activity and the adverse action. *Bryan v. Jones*, 575 F.3d 1281, 1307-08 (11th Cir. 2009). The third provision must be proven "according to traditional principals of but-for causation." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013). This requires that the employee prove that the employer would not have taken the adverse employment action but-for the employee's statutorily protected activity. *Id.* Plaintiffs cannot establish all three requisite elements.

As to the first element, Title VII's anti-retaliation provision contains the "opposition clause" 42 U.S.C. § 2000e-3(a). The opposition clause "prohibits retaliation against an employee for opposing any practice made unlawful by Title VII." *Valdes v. Miami-Dade Coll.*,463 F. App'x 843, 846 (11th Cir. 2012) (per curiam). Plaintiffs admitted multiple times that they never reported to EEO officer, HR, Pappas, Witt, or Ruiz any of the incidents they allegedly experienced. (Ford Dep. 60:3-14, 60:20-21; Hawkins Dep. 58:19-59:6, 101:24-102:4, 101:15-20). Ultimately, Ford admitted that he failed to follow policy that required him to immediately report his complaints of discrimination and unlawful harassment in writing to EEO Officer. (Ex. C to Witt Decl.; Ford Dep. 75:21-76:16).

As to the second and third elements, Plaintiffs were not subject to an adverse employment action as they each voluntarily quit as discussed above. Even if they did complaint to anyone at SRB per the protocol—which they did not—there is no causal connection between the protected activity and voluntary termination. Plaintiffs resigned as opposed to being discharged. (Witt Decl. ¶¶ 55, 59; Ex. A to Witt Decl.).

Plaintiffs fail to establish a prima facie case of retaliation. Thus, summary judgment should be granted in favor of Defendant.

**IV.   Defendant is Entitled to Summary Judgment for Count X and XXI –
FLSA – Plaintiffs Failed to Establish a Prima Facie FLSA Action.
Plaintiffs Cannot Establish the Failure to Pay Element of Their FLSA
Claim**

To establish a claim for payment of overtime compensation under the FLSA,
Plaintiffs must establish the following: (1) they were employed by Defendant during
the time period involved; (2) Defendant was engaged in commerce or production of
goods for commerce or employed by an enterprise engaged in commerce or in the
production of goods for commerce; and (3) Defendant failed to pay the overtime
compensation required by law. 29 U.S.C. § 207(a)(1). Plaintiffs cannot establish the
third requisite element.

Under FLSA, employees who sue for overtime compensation bears the burden
of proof by a preponderance of the evidence that their employer failed to properly
compensate them for their completed work. *Sizemore v. Affordable Battery, Inc.*, 49
F.Supp.3d 1138 (S.D. Fla. 2014); *Olson v. Star Lift, Inc.*, 709 F. Supp. 2d 1351 (S.D.
Fla. 2010); *Laplante v. Lake Worth Terrace Rehabilitation*, 725 F. Sup. 2d 1358
(S.D. Fla. 2010).

Plaintiffs must prove the hours that they worked and the overtime to which
they are owed. *Malbranche v. Art Hall Prot. Services, Inc.*, No. 03-22726-CIV, 2006
WL 5709120 (S.D. Fla. Dec. 20, 2006), *aff'd sub nom. Malbranche v. Art Hall Prot.
Services, Inc.,* 258 Fed. App'x. 259 (11th Cir. 2007) (granting summary judgment
for the defendant and noting that the plaintiffs were guessing as to the hours that

they worked, and thus would be guessing as to what they would be owed at trial). To be entitled to overtime payments, Plaintiffs must prove that "(1) he or she worked overtime without compensation and (2) the [Defendant] knew or should have known of the overtime work." *Allen v. Board of Pub. Educ. for Bibb Cty.*, 495 F.3d 1306, 1314–15 (11th Cir. 2007); *see also Reich v. Dep't of Conservation and Nat. Res.*, 28 F.3d 1076, 1082 (11th Cir. 1994); *Buttita v. DIRECTV LLC.*, No. 3:14CV566/MCR/EMT, 2017 WL 10456972, at *31 (N.D. Fla. Sept. 28, 2017).

Plaintiffs can determine the amount of overtime for which they were not paid through analysis of the employer's records. When an employer's records are "inaccurate or inadequate and the employee cannot offer convincing substitutes," then an employee has carried his burden of proving that he has performed work for which he was not properly compensated. *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946), *superseded by statute on other grounds as stated in Carter v. Panama Canal Co.*, 463 F.2d 1289, 1293–94 (D.C. Cir. 1972). "The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *Id*. at 687–88. *See also Lamonica v. Safe Hurricane Shutters, Inc.,* 711 F.3d 1299, 1315 (11th Cir.2013) (noting that if the employer failed to keep time records, the burden on the employee to show that she

worked overtime without compensation is "relaxed"). *Jackson v. Corr. Corp. of Am.,* 606 Fed. App'x. 945, 952 (11th Cir. 2015).

Meanwhile, if the defendant kept accurate records of employee's hours, Plaintiffs could not use the relaxed burden-shifting scheme and Plaintiffs must prove their damages with specificity. *Solano v. A Navas Party Prod., Inc*., 728 F. Supp. 2d 1334, 1344 (S.D. Fla. 2010)(quoting *Myers v. The Copper Cellar Corp.,* 192 F.3d 546, 551–52 (6th Cir.1999)).

Here, records are kept and it shows overtime was always paid. Defendant's records show Hawkins was paid **213.50** hours of overtime in the 7 months he worked for Defendant. (Ex. F to Witt Decl.; Witt Decl. ¶ 23). Meanwhile, Ford was paid **129.50** hours of overtime in the 9 months he worked at SRB. (Ex. G to Witt Decl.; Witt Decl. ¶ 24). Additionally, the job superintendent, Witt, who was at the jobsite where Plaintiffs worked, declared that Plaintiffs were paid for all hours that they actually worked, and he knows that because he observed them working and reviewed their time and pay records. (Witt Decl. ¶ 22).

Defendant inquired to Plaintiffs as to which hours they claim were not paid so it could be corrected and paid but Plaintiffs refused to cooperate or provide information. Instead, Plaintiffs sued Defendant and made accusations of forging their signatures on the time sheets, which Ruiz denied (Ruiz Dep. 47:24-48:1). But this is a red herring issue and is not dispositive of whether they were paid properly.

The element to be satisfied under a FLSA claim is whether Defendant failed to pay the overtime compensation required by law and not "who signed the time sheet." Plaintiffs were paid the correct number of hours worked as Witt and Ruiz have observed Plaintiffs, and the rest of the crew, working at the job site. The entire crew followed the same work schedule regardless of race/color. (Witt Decl. ¶ 25). The time sheets were left in the company truck's unit folder. Everybody was able to see and verify their hours at any given time while at work. Importantly, the Department of Transportation ("DOT") has strict requirements for the time the work can be conducted on the job site. (Witt Decl. ¶ 21). Because the DOT has these requirements, only in certain circumstances can individuals work outside of those hours—not for payroll purposes, but for traffic congestion purposes. (*Id*.). Here, Witt and Ruiz complied with DOT requirements to ensure there were no fines levied by the DOT. (*Id*.).

Per 29 U.S.C. ¶ 201, FLSA was designed to aid the unprotected, unorganized, and lowest paid of the nation's working population and not to weaponize it against employers, like Defendant, who has gone at lengths to make sure Plaintiffs were paid correctly only to end up being sued.

Plaintiffs fail to establish a prima facie FLSA claim. Thus, summary judgment should be granted in favor of Defendant.

## V.    Punitive Damages Should be Stricken as Plaintiffs Failed to Meet the Heightened Standard to Prove Them

Punitive damage awards are allowed only in cases of intentional discrimination, and not for an employment practice that is unlawful because of its disparate impact. § 1981a(a)(1); *Kolstad v. Am. Dental Ass'n,* 527 U.S. 526, 534 (1999). But not every instance of intentional discrimination justifies punitive damages award. To be entitled to an award of punitive damages Plaintiffs must prove by a preponderance of the evidence that Defendant acted with either malice or with reckless indifference toward Plaintiff's federally protected rights. *Id.* at 536; *Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1280 (11th Cir. 2008). Showing reckless disregard means "failure to make adequate inquiry into whether conduct is in compliance with the Act."  5 C.F.R. § 551.104.  A willful violation of the law exists when the employer "disregarded the very possibility that it was violating the statute." *Allen*, 495 F.3d at 1323-24.

Even if Defendant engaged in disparate impact practice—which it did not—punitive damages still do not apply as Plaintiffs would be hard-pressed to prove Defendant disregarded even the smallest possibility of violating the law. Especially when Plaintiffs failed to report their discrimination complaints and when they did complain about unpaid hours worked, Defendant actively sought Plaintiffs to resolve their issues. Plaintiffs are not entitled to compensatory damages either as they did

not seek treatment for emotional pain and mental anguish. Thus, Plaintiffs are not entitled to punitive or compensatory damages.

## VI. __Plaintiffs Failed to Mitigate Damages__

Plaintiffs are "required to mitigate damages by being reasonably diligent in seeking employment substantially equivalent to the position [they] [were] denied." *Smith v. Am. Serv. Co. of Atlanta, Inc.,* 796 F.2d 1430, 1431 (11th Cir. 1986)(internal citations omitted). Here, Plaintiffs failed their duty to mitigate damages because they voluntarily terminated their positions at SRB as opposed to continuing to work there, even though SRB wanted them to continue working there. (Witt Decl. ¶ 64). Additionally, two of their purported subsequent employers denied ever employing Plaintiffs. (Ex. 10, Attestation of No Records).

## <u>CONCLUSION</u>

For the above reasons, Defendant respectfully requests this Court grant its Motion for Summary Judgment and grant such further relief that the Court deems just and proper.

Respectfully submitted this 5th day of June, 2025.

By: */s/ Brian D. Rubenstein*
    BRIAN D. RUBENSTEIN
    Florida Bar No.: 16997

CHARLOTTE MARIE A. MANAPAT-
NGUYEN
Florida Bar No.:  1058130

COLE, SCOTT & KISSANE, P.A.
*Counsel for Defendant SOUTHERN
ROAD & BRIDGE, LLC*
500 N. Westshore Boulevard, Suite 700
Tampa, Florida 33609
Telephone (813) 864-9398
Facsimile (813) 286-2900
Primary e-mail:
brian.rubenstein@csklegal.com
Secondary e-mail:
charlottemarie.manapat-
nguyen@csklegal.com;
mary.buckmaster@csklegal.com

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(F)

Pursuant to Local Rule of Civil Procedure 7.1(F), I hereby certify that the foregoing Defendant's Motion for Summary Judgment contains 8,000 words, inclusive of headings, footnotes, and quotations, but exclusive of case style, signature block and Certificate of Service.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 5th day of June, 2025, a true and correct copy of the foregoing has been furnished by electronic filing with the Clerk of the court via CM/ECF, which will send notice of electronic filing to all counsel of record.

Respectfully submitted,


By:  */s/ Brian D. Rubenstein*
       BRIAN D. RUBENSTEIN
       Florida Bar No.:  16997
       CHARLOTTE MARIE A. MANAPAT-
       NGUYEN
       Florida Bar No.:  1058130

       COLE, SCOTT & KISSANE, P.A.
       *Counsel for Defendant SOUTHERN*
       *ROAD & BRIDGE, LLC*
       500 N. Westshore Boulevard, Suite 700
       Tampa, Florida 33609
       Telephone (813) 864-9398
       Facsimile (813) 286-2900
       Primary  e-mail:
       brian.rubenstein@csklegal.com
       Secondary e-mail:
       charlottemarie.manapat-
       nguyen@csklegal.com;
       mary.buckmaster@csklegal.com