IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

NICHOLAS FORD and
ALONZO HAWKINS,                              CASE NO.: 3:24-cv-00404-MCR-ZCB

    Plaintiffs,

v.

SOUTHERN ROAD & BRIDGE, LLC,

    Defendant.
_____/

## DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

SOUTHERN ROAD & BRIDGE, LLC ("Defendant" or "SRB"), by and through undersigned counsel, and pursuant to Local Rule 56.1(D), files this Reply Memorandum in Support of Its Motion for Summary Judgment, and in support states as follows:

**I.    PLAINTIFFS FAILED TO SATISFY THEIR OBLIGATION TO PROVIDE PROBATIVE EVIDENCE.**

Plaintiffs provide bare, conclusory, self-serving allegations unsupported by material facts which Courts have held cannot defeat a motion for summary judgment. *Raney v. Vinson Guard Serv., Inc.*, 120 F.3d 1192, 1198 (11th Cir. 1997) (Plaintiffs, as the non-moving party, have the "obligation to set forth significant probative evidence" to show that a "genuine issue exists for trial."). To set forth an affirmative evidence, Plaintiffs must cite to any record of evidence or any case law

and not just rely on argument of counsel. *See* N.D. Fla. Loc. R. 56.1(F) and ECF 8, p. 11. The Eleventh Circuit opined that a party responding to a summary judgment motion is required to "submit a statement of relevant facts with corresponding record cites", and that this "requirement [is] not to be taken lightly, especially since [the court] is not obligated to cull the record [itself] in search of facts not included in the statements of fact." *Johnson v. City of Fort Lauderdale*, 126 F.3d 1372, 1373 (11th Cir. 1997); *accord Ayala-Gerena v. Bristol Myers-Squibb Co.*, 95 F.3d 86, 95 (1st Cir. 1995) (holding that the district court properly disregarded plaintiffs' "numerous unsupported factual allegations" in their opposition to summary judgment). Counsel's arguments unsupported by facts are considered inadmissible evidence "that cannot defeat a motion for summary judgment." *Evans v. McClain of Georgia, Inc.*, 131 F.3d 957, 962 (11th Cir. 1997) "Without more, the Court cannot rely simply on the argument of counsel....[T]here is simply no evidence in the record before us that in any way establishes the [material facts]. All we have is the argument of counsel ..., and we are sure that learned counsel understand that summary judgment must rest on something more." *Lira v. Matthew's Marine Air Conditioner, Inc.*, 741 F. Supp. 2d 1305, 1311 (S.D. Fla. 2010). *See also* N.D. Fla. Loc. R. 56.1(F) and ECF 8, p. 11.

Notably, Plaintiffs did not dispute Defendant's material facts in paragraphs 1-4, 6-13, 18-21, 23-25, 27-36, 38, 39, 41, 44, 45-47, 52, and 53. As such, the Court

should disregard Plaintiffs' Opposition to Summary Judgment ("OSJ").

Plaintiffs failed to provide probative evidence in disputing a material fact. (*See* 24, generally) Instead, Plaintiffs attempt to dispute material facts with rambling arguments lacking citation to supporting evidence. Plaintiffs present "facts" in ¶¶ 14, 16, 26, 38, 40, 47-49, 51, 54, and ECF 24, p. 7, that are either misunderstood or have no record citation at all and are simply Plaintiffs' Counsel's arguments. Just like the Court in *Lira*, this Court should disregard Plaintiffs' OSJ for failure to cite to any record of evidence as "[w]ithout more, the Court cannot rely simply on the argument of counsel." *Lira*, 741 F. Supp. 2d at 1311. Additionally, Plaintiffs' reliance on a declaration signed by Dezmond Jones as an "uninterested third party" to the proceedings is mischaracterized as Mr. Jones would likely be very interested in an outcome in favor of his Cousins. (ECF 21-2, 63:12-13; ECF 21-5, 60:3).

Plaintiff's exhibits attached to the OSJ are also not authenticated, nor are they reasonably attributed to be from Defendant, employees of Defendant, or on behalf of Defendant as the individuals' names in the messages threatening harm are not those identified by Plaintiffs. (ECF 21-3, 58:12).

## II. PLAINTIFFS' OSJ REGARDING ADVERSE EMPLOYMENT ACTIONS FAIL TO SURVIVE SUMMARY JUDGMENT.

Plaintiffs contradict themselves in effort to convince the Court Plaintiffs were terminated. Plaintiffs claim Defendant's reason for termination was pretextual as Plaintiffs were never issued a warning, write-up or discipline prior to Defendant's

decision to purportedly terminate them. (ECF 24, p. 19). But then claim, "Defendant took adverse action against Plaintiffs in the form of reprimand and termination." (ECF 24, p. 7). Plaintiffs claim not signing their termination notice demonstrated their refusal to cease employment. (*Id.*) However, Plaintiffs never came back to work even after multiple invitations for their return. (ECF 21, ¶¶ 44-51).

Additionally, Plaintiffs indicated in their application for other employment that they were not terminated from SRB belying their representations with the Court. The Courts have consistently granted summary judgment and held that "[w]hen a party later contradicts his own statements of record without any valid explanation for the contradiction, that party fails to raise a genuine dispute of fact." *Bailey v. Metro Ambulance Services, Inc.*, 992 F.3d 1265, 1279 (11th Cir. 2021); *Williams v. Corr. Corp. of Am.*, No. 5:06CV251-RH/MD, 2008 WL 11343429, at *1 (N.D. Fla. May 13, 2008); *Carlson v. Liberty Mut. Ins. Co.*, No. 805CV-817T-24MSS, 2006 WL 2830873, at *5 (M.D. Fla. Oct. 2, 2006), *aff'd,* 237 Fed. Appx. 446 (11th Cir. 2007). Moreover, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Baxter v. Roberts*, 54 F.4th 1241, 1253 (11th Cir. 2022).

Here, Plaintiffs harped that "Defendant terminated Plaintiffs" (ECF 24, ¶51; pp. 2,7,8). However, in Hawkins' application for employment with The Rios Group[1] dated March 8, 2024, he indicated that he was employed with SRB "until January 12, 2024." (Ex. 11). Yet, Hawkins was voluntarily terminated for "no call, no show" on November 9, 2023. (ECF 21, ¶50). Notably, Hawkins disclosed that the reason he left SRB was "finish job" and not because he was terminated. (Ex. 11, p. 3).

> **EMPLOYMENT HISTORY**
>
> List all employments for the past 10 years, starting with the most recent position. All information **must** be completed. You may attach a resume, but not in place of completing the required information.
>
> Employed From: 3/17/23
> Employer Name: Southern Road and Bridges
> Supervisor Name: Ryan Witt
> Employed Until: 1/12/24
> Employer Address: 715 Wesley Ave.
> Supervisor Phone #:
> Job Title: Labor
> Reason for Leaving: Finish Job
> Duties & Responsibilities: Traffic Control

The application form included a certification that Hawkins signed stating: "[Hawkins] shall be subject to dismissal if any information that [he has] given in this application is false or misleading." (*Id.* at p. 4).

Meanwhile, Ford began his employment at Zephyr Towers, LLC on September 14, 2024. (ECF 21-2, 20:1-10). Notably, in the resume Ford submitted to Zephyr around September 2024, he indicated that Defendant still employed him. (Ex. 12). However, Ford was voluntarily terminated for job abandonment on November 6, 2023. (ECF 21, ¶ 47).

---

[1] Hawkins testified that he got hired to The Rios Group on March 18, 2024. (ECF 21-3, 108:9-17).

Ford's signed application agreement indicated "[Ford] understand[s] that falsification of any information on company documents may lead to denial of employment or termination." (Ex. 12, p.7). Clearly, Plaintiffs declare to the Court that they were terminated by SRB only to attest to others, under penalty of dismissal, that they were not. (Ex. 11 & 12) Plaintiffs fail to raise a genuine dispute of fact. As such, like the Court in *Baxter*, this Court should not adopt Plaintiffs version of the facts and grant Defendant's MSJ.

Hawkins did not have a valid driver's license when he applied to and while he was employed at SRB. (Ex. 13). Hawkins only presented a valid State Identification Card and his Social Security Card for his employment eligibility verification at SRB. (Ex. 14). Hawkins was **only recently issued** on February 27, 2024—three months after Hawkins was voluntarily terminated for "no call, no show." (Ex. 15).

Second, Plaintiffs unsupported argument that "[t]here is no documentation of Witt reprimanding Hawkins for this alleged misconduct [of unauthorized driving of company truck]" is baseless. (ECF 24, ¶ 26). The Handbook provides a "Progressive Discipline Policy" (ECF 21-7, p. 52). Under this Policy, "[d]isciplinary action may call for any of four steps - verbal warning, written warning, suspension with or without pay, or termination of employment - depending on the severity of the problem and the number of occurrences. There may be circumstances when one or more steps are bypassed." (*Id.*). In his declaration, Witt intimated that he caught

Hawkins driving the company truck and he was immediately reprimanded. (ECF 21-6, ¶ 37). This discipline falls under a verbal warning. Similar to Ford's own testimony that Ruiz immediately suspended him for three days after Ford was found sleeping on the job. (ECF 21, ¶ 21). This was an immediate suspension considering the severity of the infraction and not a written warning. There was an infraction and discipline without written documentation in accordance with the Handbook (ECF 21-7, p. 52). As such, this Court should disregard Plaintiffs' OSJ.

With respect to the remainder of Plaintiffs' alleged adverse employment actions, there is not sufficient evidence to support that those alleged actions were related to any protected characteristics or activity. This is established in Defendant's Statement of Material Facts in its Motion for Summary Judgment which addresses alternative adverse employment actions and provides undisputed facts supporting what transpired and the legitimate business reasons for same. As such, Plaintiffs cannot survive Defendant's Motion for Summary Judgment.

Third, Plaintiffs' allegation of hostile work environment are unsupported by any record evidence. Plaintiffs allege the use of the word '*nigger*,' being said daily and so frequently that [sic] cannot state the exact number of times Defendant used that word." (ECF 24, p. 12). Yet, Plaintiffs fail to cite any evidence to support the same. No such evidence exists. (ECF 21-2; ECF 21-3). As the Eleventh Circuit has held, "[s]ummary judgment cannot be avoided, based on hunches unsupported with

Page 7

significant probative evidence." *Raney,* 120 F.3d at 1198.

The Court in *Cooler v. Layne Christensen Co.* "distinguished between supervisors using severe slurs like 'nigger' to humiliate the plaintiffs and supervisors using slurs in ways that were not 'directly humiliating or threatening.'" *Cooler v. Layne Christensen Co.*, 710 Fed. Appx. 842, 848 (11th Cir. 2017). Here, the text messages provided by Plaintiffs are referring to loud music and other people being loud.

Plaintiffs' counsel continues to argue that "Defendant interfered with Plaintiffs' day-to-day job performance" without support to any record evidence. (ECF 24, p. 14).

Plaintiffs' reliance on *Stallworth v. Okaloosa County Sch. Dist.*, is misplaced. In *Stallworth*, "[plaintiff] testified that she had complained to several individuals regarding [offender's] alleged discriminatory treatment or harassment and of issues regarding her … claims, and she … kept a personal diary or list of events that occurred during her employment." *Stallworth v. Okaloosa Cnty. Sch. Dist.*, No. 3:09CV404/MCR/CJK, 2011 WL 4552187, at *6 (N.D. Fla. Sept. 30, 2011). Here, Plaintiffs admittedly did not complain to HR and did not keep a diary to memorialize such events.

### III. PLAINTIFFS' CANNOT SURVIVE SUMMARY JUDGMENT WITH RESPECT TO THEIR PAY.

Plaintiffs OSJ asserts arguments unsupported by testimony. For example,

Page 8

Plaintiffs' cited testimony by Pappas does not discuss "underreporting" or "reducing" Plaintiffs' overtime hours. (ECF 24, pp. 24-25). Pappas testified no one complained about incorrect hours. (ECF 21-4, 57:10-14).

The Supreme Court is clear that "summary judgment serves as the ultimate screen to weed out truly insubstantial lawsuits prior to trial. *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998). At that stage, if the defendant-official has made a properly supported motion, the plaintiff may not respond simply with general attacks upon the defendant's credibility, but rather must identify affirmative evidence from which a jury could find that the plaintiff has carried his or her burden of proving the pertinent motive." *Id*. The Courts echo that "a plaintiff cannot defeat a motion for summary judgment by resting on the conclusory allegations in [his] pleadings." *Am. Auto. Ins. v. Fisherman's Paradise*, No. 93-2349CIVGRAHAM, 1994 WL 1720238, at *2 (S.D. Fla. Oct. 3, 1994) (citing to Fed.R.Civ.P. 56(e)). Plaintiffs OSJ is filled with immaterial matters and conclusory arguments that do not allow Plaintiff to survive summary judgment.

Meanwhile, the relaxed burden shifting is not automatic even with allegations of inaccurate records. Plaintiffs incorrectly purport because someone else signed the signatures on the timesheet Defendant did not accurately calculate Plaintiffs' owed wages and Defendant has to proffer evidence of the precise amount worked. (ECF 24, pp. 24-25; 27-28). This is unfounded.

Assuming, arguendo, that the time entered on the timesheets are inaccurate— which they are not— Defendant is still entitled to summary judgment. In *Boston v. Kroger Co.*, "the court granted the defendant's motion for summary judgment even though plaintiff tried to fall back on the *Mt. Clemens* [relaxed burden-shifting] standard." *Celorrio v. Facci of Merrick Park, Inc.*, No. 19-25283-CIV, 2022 WL 4594119, at *5 (S.D. Fla. June 22, 2022) (citing *Boston v. Kroger Co.*, No. 1:19-CV-0810-JPB-JSA, 2020 WL 10058141 (N.D. Ga. Dec. 1, 2020), *report and recommendation adopted*, No. 1:19-CV-00810-JPB, 2021 WL 2459480 (N.D. Ga. Jan. 20, 2021)).

First, the Court in *Kroger* made it clear that "[i]n the Eleventh Circuit, courts typically apply the framework established in *Mt. Clemens Pottery* 'in situations where **no records were kept at all or no overtime was recorded.**'" *Boston*, 2020 WL 10058141, at *22. "[T]he burden-shifting analysis should not apply 'every time employers had any error at all in their records.'" *Id*. **(emphasis added.)** Here, records are kept. (ECF 21, p.32).

Second, the Court opined that "[i]f the records are materially reliable, even with some errors, then the trier of fact may not be able to rely on burden-shifting analysis to alleviate an employee's initial burden of showing how many hours she was not compensated." *Celorrio*, 2022 WL 4594119, at *5. In fact, in *Kroger*, the court did not employ the *Mt. Clemens* relaxed burden-shifting analysis based on

purportedly inaccurate records. *Id*.

In *Kroger*, "[t]he plaintiff was an African American male previously employed by the defendant." *Celorrio*, 2022 WL 4594119, at *5. "The defendant maintained an open-door payroll system that allowed employees the opportunity to report errors in their hours worked and paychecks and request approval for overtime." *Id.* "The plaintiff's errors were always corrected". *Id.* "Every employee, including the plaintiff, had access to the timekeeping system to verify their hours." *Id*. "In addition, the plaintiff was regularly paid overtime hours throughout his employment with the defendant for about two years: thirty overtime hours in 2015, 28 overtime hours in 2016, and twenty straight overtime hours in 2017." *Id.*

Here, Plaintiffs can call directly to the EEO office, the HR department, the project manager, or the SRB office. (ECF 21, ¶ 12). Plaintiffs were even instructed to contact Christina. (ECF 21, ¶ 36). Hawkins affirmed he was paid when he discussed an overtime the issue with Witt. (ECF 21, ¶¶ 32, 33). When Hawkins complained in November 2023 about purported in correct time, Witt and HR immediately contacted Hawkins about the issue. (ECF 21, ¶¶ 34-36). The time sheets were left in the company truck's unit folder and everyone had the ability to verify their hours worked. (ECF 21, ¶ 43). Between April 11, 2023 and November 9, 2023, Hawkins was paid **213.50** of overtime hours. (ECF 21, ¶ 30). Between February 26, 2023 and November 6, 2023, Ford was paid **129.50** of overtime hours. (ECF 21, ¶

31). Like the Court in *Kroeger*, this Court should find that Defendant had maintained materially accurate records, and Plaintiffs did not meet their burden of proof to preserve a FLSA claim.

Even if the burden-shifting analysis applies, Plaintiffs' projections that they are each owed overtime wages, apart from what has already been paid them[2], is just inconceivable. According to the Department of Transportation ("DOT") Pay Estimate Report, in completing the bridge project, Defendant used an extra thirteen (13) days from its original 401 contract days. (Ex. 15). That means a total of 104 regular hours. Ford asserts he is owed about **230.5** hours of overtime wages, apart from the **129.50** overtime hours already paid. (ECF 24, p. 26). To fulfill the **230.5** hours of overtime in 13 days, Ford must be working approximately 17 hours of overtime per day on top of the 8 hours of regular time. Meanwhile, Hawkins purports he is owed about **346.5** hours of overtime wages, apart from the **213.5** overtime hours already paid. (ECF 24, p. 26). To fulfill the **346.5** hours of overtime in 13 days, Hawkins must be working approximately 26 overtime hours per day on top of the 8 hours of regular time.

Notably, in working on the bridge, the DOT required closure schedule starts from 8:00 p.m. to 5:30 a.m., Sunday through Thursday. (ECF 21-6, ¶ 21). Plaintiffs

---

[2] Ford was paid **129.50** overtime hours. (ECF 21, ¶ 31). Hawkins was paid **213.50** overtime hours. (ECF 21, ¶ 30).

are not working "before sunrise and after sunset" because of overtime but because of DOT required traffic closures. (ECF 24, pp. 26-27; ECF 21, p. 33). Contrary to Plaintiffs' claim that timesheets are inaccurate as "they do not indicate Plaintiffs worked when the sun was down" (ECF 24, pp. 26-27), the timesheets are on point. The timesheets accurately reflect a start time of 7:00 p.m. and an end time of 4:00 - 5:00 p.m. (ECF 24-10, pp. 1,3). The timesheet also accurately reflects an overtime on a Saturday from 9:00 a.m. to 4:00 p.m. (ECF 24-10, p. 2).

Importantly, "[t]here is no violation of the FLSA where the employee performs uncompensated work but deliberately prevents his or her employer from learning of it." *Allen v. Bd. of Pub. Educ. for Bibb Cnty.*, 495 F.3d 1306, 1319 (11th Cir. 2007). Defendant asked Plaintiffs multiple times what hours were wrong so it could be corrected and paid but Plaintiffs refused to provide information. Plaintiff never contradicted this fact. (ECF 21, ¶39; 21-10; 21-16). Based on the foregoing, the Court should disregard Plaintiffs' OSJ and grant Defendant's MSJ.

## CONCLUSION

For the above reasons, Defendant respectfully requests this Court grant its Motion for Summary Judgment and grant such further relief that the Court deems just and proper.

Respectfully submitted this 24th day of July, 2025.

By: /s/ Anna M. Urie
BRIAN D. RUBENSTEIN
Florida Bar No.: 16997
CHARLOTTE MARIE A. MANAPAT-NGUYEN
Florida Bar No.: 1058130
ANNA M. URIE
Florida Bar No.: 127455

COLE, SCOTT & KISSANE, P.A.
*Counsel for Defendant SOUTHERN ROAD & BRIDGE, LLC*
500 N. Westshore Boulevard, Suite 700
Tampa, Florida 33609
Telephone (813) 864-9398
Facsimile (813) 286-2900
Primary e-mail:anna.urie@csklegal.com
Alternative email: brian.rubenstein@csklegal.com
Secondary e-mail: charlottemarie.manapat-nguyen@csklegal.com;
Secondary email: mary.buckmaster@csklegal.com

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(F)

Pursuant to Local Rule of Civil Procedure 7.1(F), I hereby certify that the foregoing Defendant's Motion for Summary Judgment contains 3,150 words, inclusive of headings, footnotes, and quotations, but exclusive of case style, signature block and Certificate of Service.

## CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that on this 24th day of July, 2025, a true and correct copy of the foregoing has been furnished by electronic filing with the Clerk of the court via CM/ECF, which will send notice of electronic filing to all counsel of record.

    Respectfully submitted,

By: */s/ Anna M. Urie*
    BRIAN D. RUBENSTEIN
    Florida Bar No.: 16997
    CHARLOTTE MARIE A. MANAPAT-NGUYEN
    Florida Bar No.: 1058130
    ANNA M. URIE
    Florida Bar No.: 127455

    COLE, SCOTT & KISSANE, P.A.
    *Counsel for Defendant SOUTHERN ROAD & BRIDGE, LLC*
    500 N. Westshore Boulevard, Suite 700
    Tampa, Florida 33609
    Telephone (813) 864-9398
    Facsimile (813) 286-2900
    Primary e-mail: anna.urie@csklegal.com
    Alternative email: brian.rubenstein@csklegal.com
    Secondary e-mail: charlottemarie.manapat-nguyen@csklegal.com;
    Secondary email: mary.buckmaster@csklegal.com